**R.O. GILES ENTERPRISES, INC., Appellant,**

v.

Roger L. MILLS (Deceased); Linda S. Mills (Widow); Linda S. Mills, Executrix of The Estate of Roger L. Mills; Larry Mills d/b/a Larry Mills Logging; Hon. Donna Terry, Administrative Law Judge; Uninsured Employers' Fund; and Workers' Compensation Board Appellees.

No. 2008–CA–000709–WC.

Court of Appeals of Kentucky.

Sept. 26, 2008.

James R. Golden Middlesboro, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Patrick M. Roth, Frankfort, KY, for appellee, The Uninsured Employers' Fund.

Before NICKELL, MOORE, and STUMBO, Judges.

*OPINION*

MOORE, Judge.

R.O. Giles Enterprises, Incorporated, appeals from an opinion of the Workers' Compensation Board affirming a decision of the Administrative Law Judge (ALJ) that R.O. Giles was an up-the-ladder contractor pursuant to Kentucky Revised Statute (KRS) 342.610(2)(a). Concluding that there is substantial evidence in the record to support a finding that the arrangement between R.O. Giles and Larry Mills, d/b/a, Larry Mills Logging fits the description of KRS 342.610(2)(a), we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

R.O. Giles Enterprises, Incorporated, located in Tennessee, is engaged in a number of business operations involving rental

properties, commercial rental properties and industrial parks. It also owns a number of undeveloped parcels of real property, including the property at issue in this case. Ricky Giles is the president of R.O. Giles.

Relevant to this case is R.O. Giles's status as a holding company for a parcel of unimproved real property in Knox County, Kentucky. Larry Mills, d/b/a Larry Mills Logging (L.Mills), along with Barry Stopher, traveled to Tennessee to approach Ricky regarding the property.[1] L. Mills wanted to enter into an agreement with R.O. Giles to purchase the timber, and Stopher wanted to enter into a lease to mine coal on the property.

Later, on behalf of R.O. Giles, Ricky entered into a coal lease with Sandhill Energy, LLC, to mine the coal on the property. Thereafter, L. Mills and Ricky, on behalf of R.O. Giles, entered into a Timber Sale Agreement prepared by an attorney hired by L. Mills. Relevant to this case, the Timber Sale Agreement provided that:

R.O. Giles sold all merchantable trees on the property to L. Mills.

The parties agreed that L. Mills would pay R.O. Giles 35 percent on all saw logs and peelers and $5.00 per ton on soft chip and $3.00 per ton on all hardwood chip.

All timber was to be removed by L. Mills on or before May 15, 2007; thereafter, all timber rights reverted back to R.O. Giles.

L. Mills agreed that he and his agents and contractors would conduct the operation in a "professional workman like manner and in accordance with 'Best Management Practices' and sound Forestry Practices."

It is undisputed that R.O. Giles is not in the business of selling timber.[2] Ricky testified that he agreed to the percentage method of payment because he did not know how to properly value the timber.

According to Ricky's deposition, "the coal company was going to do mountaintop removal, which was strip mining, and [L.] Mills ... offered to buy the timber instead of just pushing it over the hollow, but the main reason we were just going to .... (sic) we were going to mine it." Later in his deposition, Ricky was asked, in regard to the strip mining operation, "[i]n order to [strip mine], the standing timber would have to be dealt with in some manner?" Ricky answered, "[y]es, sir." Thereafter, he was asked: "It would either have to be pushed to the side as you've indicated or it could be cut and harvested and removed and sold for revenue, for income?" Ricky answered, "[y]es." Ricky was asked an additional question: "[T]o remove this timber ultimately for the purpose of removing the coal, you entered this agreement which is styled Timber Sale Agreement with Mr. Larry Mills. Is that right?" To this, Ricky again responded, "[y]es."

It is undisputed that R.O. Giles did not retain any control of how, where, to whom or how often logs would be sold. R.O. Giles had no input into the price for the harvested logs, nor which trees were removed from the property. Once the agreement was signed, L. Mills did not have to seek any direction or permission from R.O. Giles regarding the removal of the timber in any respect. R.O. Giles did

---

1. L. Mills testified in his deposition that he did not know of a mining operation that was going to take place on the property. This testimony was before the ALJ, who relied upon Ricky's description of the meeting leading to R.O. Giles's entering into a contract with L. Mills and Sandhill Energy.

2. Liability under KRS 342.610(2)(b) is not at issue in this matter.

not provide any equipment or money for the timber removal operation. Moreover, R.O. Giles had no control nor input regarding who L. Mills hired to work on the timber removal venture.

After L. Mills began logging the property and selling the logs, the sawmill forwarded a check to R.O. Giles for 35 percent of the profits from the logs about every two weeks. Ricky never had contact with any of the sawmills where the timber was sold, and he never visited the timber cutting operation on the property.

Roger Mills[3] (R. Mills) worked for L. Mills on the R.O. Giles property, operating L. Mills's dozer. R. Mills was paid $100 per day for each day he worked for L. Mills.[4]

R. Mills was killed while on the job for L. Mills in a tragic accident involving the dozer. We need not review the details of the accident as they are not relevant to the disposition of this matter.

Linda Mills, R. Mills's widow, was qualified as the executrix of R. Mills's estate and was substituted as a party in the petition seeking workers' compensation benefits from L. Mills, d/b/a Larry Mills Logging. R.O. Giles was joined as a party defendant based upon potential liability pursuant to KRS 342.610(2)(a). The Uninsured Employers' Fund was joined as a party because L. Mills did not have workers' compensation insurance coverage.

Several issues were presented before the ALJ, including, in relevant part, whether R. Mills was an employee of L. Mills and whether R.O. Giles was an up-the-ladder contractor, subject to liability under KRS 342.610(2)(a). The ALJ concluded that, at the time of his death, R. Mills was an employee of L. Mills and R.O.

Giles was an up-the-ladder contractor. Consequently, in the event that L. Mills failed to timely pay the compensation the ALT awarded R. Mills's estate, R.O. Giles was liable for the payments to the estate.

R.O. Giles and L. Mills appealed the ALJ's conclusions to the Workers' Compensation Board. The Board affirmed the ALJ's opinion. R.O. Giles has now appealed the Board's opinion. Concluding that substantial evidence exists to support the legal conclusion of up-the-ladder contractor liability under KRS 342.610(2)(a) in this case, we affirm.

## ANALYSIS

Kentucky Revised Statute 342.610(2)(a) provides, in pertinent part:

(2) A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. A person who contracts with another:

(a) To have work performed consisting of the removal, excavation, or drilling of soil, rock, or mineral, or the cutting or removal of timber from land; or

. . .

shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. This subsection

---

**3.** Roger Mills and Larry Mills were not related.

**4.** Depending on whose testimony is believed, R. Mills worked anywhere from two to four days per week for L. Mills.

shall not apply to the owner or lessee of land principally used for agriculture.

R.O. Giles appeals, arguing that the ALJ and Board erred in concluding that R.O. Giles's transaction with L. Mills fits the criteria of KRS 342.610(2)(a). Both parties argue in their briefs their respective views of the ALJ's and Board's interpretation of up-the-ladder contractor liability as analyzed in *Elkhorn–Hazard Coal Land Corporation v. Taylor*, 539 S.W.2d 101 (Ky.1976). Upon review, we need not look to *Elkhorn–Hazard* to resolve the issue at hand. Rather, the unambiguous statute, when analyzed with the facts, compel us to determine that substantial evidence exists to satisfy the legal elements of up-the-ladder contractor status in this case, without reference to *Elkhorn–Hazard*.

R.O. Giles argues that the percentage type of contract it entered into with L. Mills is typical in the timber industry, and this is supported by the expert testimony of Richard Brantigan, a consulting forester. Based on this, R.O. Giles urges this Court to decide that the arrangement at hand was a simple agreement for the sale of timber, and not for work or services performed for it as the landowner.

In theory, we might agree with this argument, but for Ricky Giles's deposition testimony. He testified multiple times that the purpose of the removal of timber was ultimately to advance the removal of the coal. In her findings of fact and conclusions of law, the ALJ determined "Giles is a landowner which made a commercial decision to have timber removed from its 200 acre tract in Knox County for the purpose of generating revenue and to facilitate the subsequent removal of coal through the mountaintop removal method." The Board, agreeing with the ALJ, ruled that "Giles verified he entered into the timber sales agreement with Larry Mills in order to remove the timber for the purposes of removing the coal." These determinations were based on Ricky's own deposition testimony. Thus, R.O. Giles and L. Mills entered into a contract for L. Mills to provide the service of removal of timber from R.O. Giles's property. Consequently, this arrangement unquestionably fits within the description of a contractor set forth in KRS 342.610(2)(a), i.e., "[t]o have work performed consisting of ... the cutting or removal of timber from land...." Accordingly, substantial evidence supports the ALJ's and Board's determination that R.O. Giles was an up-the-ladder contractor, and the legal application of these facts to KRS 342.610(2)(a) is not in error. Therefore, we affirm.

ALL CONCUR.