DOCTORS' ASSOCIATES,
INC., Appellant,

v.

UNINSURED EMPLOYERS' FUND;
Tonda Michelle Brown; UBC, d/b/a
Subway; Honorable John B. Coleman,
Administrative Law Judge; and
Workers' Compensation Board, Appel-
lees.

No. 2010–SC–000658–WC.

Supreme Court of Kentucky.

Nov. 23, 2011.

Todd Smith Page, Stoll, Keenon, Ogden, PLLC, Lexington, KY, Walter L. Sales, Stoll, Keenon, Ogden, PLLC, Louisville, KY, Counsel for Appellant.

James Robert Carpenter, Office of the Attorney General, Uninsured Employer's Fund, Frankfort, KY, Counsel for Appellee Uninsured Employer's Fund.

Kevin Russell Mullins, Whitesburg, KY, Counsel for Appellee Tonda Michelle Brown.

Not represented by counsel, Counsel for Appellee UBC, d/b/a Subway.

John Barry Coleman, Pikeville, KY, Counsel for Appellee, Honorable John B. Coleman, Administrative Law Judge.

Dwight Taylor Lovan, Executive Director, Office of Workers' Claims, Prevention Park, Frankfort, KY, Counsel for Appellee Workers' Compensation Board.

Bethany A. Breetz, Forrest Wales Ragsdale, III, Margaret R. Grant, Stites & Harbison, PLLC, Louisville, KY, Aaron D. Van Oort, Kerry L. Bundy, Faegre & Benson, LLP, Minneapolis, MN, Counsel for Amicus Curiae.

Opinion of the Court by Chief Justice MINTON.

Doctors' Associates, Inc., (DAI) owns the "Subway" trademark and franchises the right to operate Subway sandwich shops worldwide. In workers' compensation proceedings in Kentucky, the Administrative Law Judge (ALJ) dismissed the Uninsured Employers' Fund's (UEF) claim against DAI for benefits paid to an employee of an uninsured DAI franchisee located in Kentucky. The ALJ ruled that Kentucky Revised Statutes (KRS) 342.610(2) does not encompass a franchisor-franchisee relationship. The Workers' Compensation Board affirmed.

Holding that business opportunity relationships and franchise relationships must be considered under KRS 342.610(2) on a case-by-case basis, the Court of Appeals reversed the Workers' Compensation Board and remanded for further consideration of whether the work the uninsured franchisee performed was a regular or recurrent part of DAI's business.

DAI appeals to this Court, asserting, among other things, that the Court of Appeals exceeded the scope of its review with respect to the ALJ's factual findings and that DAI does not qualify as a contractor under KRS 342.610(2).

We reverse the opinion of the Court of Appeals and affirm the Workers' Compensation Board opinion. Nothing in Chapter 342 precludes a franchisor who meets the definition found in KRS 342.610(2) from also being considered a contractor. And the ALJ's legal conclusion to the contrary is erroneous. But the ALJ's finding that DAI is not a contractor under KRS 342.610(2) was not based wholly on the erroneous legal interpretation but on the facts of the case. We refrain from addressing DAI's unpreserved argument that the UEF has no right of subrogation or reimbursement in this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The claimant sought workers' compensation benefits for a work-related injury sustained while working for Watash UBC, d/b/a Subway. Watash did not have workers' compensation insurance coverage at the time of the injury, so the claimant joined the UEF as a party. The ALJ denied the UEF's initial and renewed motions to join DAI as a party, holding that the franchisor-franchisee relationship was not so similar to that of the contractor-subcontractor relationship as to create up-the-ladder liability under KRS 342.610(2).

The claim was later bifurcated with respect to the party responsible for benefits; and the ALJ granted the UEF's second renewed motion to join DAI, acknowledging that DAI's liability would likely be appealed. The ALJ approved a settlement in which the UEF agreed to pay the claimant income and medical benefits but reserved the right to proceed against DAI as a potential up-the-ladder employer under KRS 342.610(2)(b). The sole issue submitted for a decision by the ALJ was whether DAI was a contractor and, thus, liable to the employee of its uninsured subcontractor.

The record indicates that there are about 14,800 Subway shops throughout the United States of which DAI owned and operated two at the time of the prior proceedings.[1] DAI entered into an agreement with William Ihrig, which gave Ihrig the right to operate a Subway franchise[2] in Whitesburg, Kentucky. Ihrig formed Watash UBC and assigned his rights under the agreement to Watash. The franchise agreement entitled Watash to operate sandwich shops under the Subway name, using certain recipes, formulas, food preparation procedures, business methods, business forms, and business policies developed by DAI. The agreement required Watash, among other things, to be "identified at all times during the term of this

---

1. DAI's brief states that it no longer owns these two Subway shops.

2. Numerous Kentucky statutes contain the term *franchise* but none defines it. KRS 367.807(*l*)(a) of the Business Opportunity Act exempts the offeror of a business opportunity from the Act's provisions if the offeror meets the definition of a *franchise* found in 16 CFR § 436.1(h). As so defined, a franchise has three characteristics: 1) It is a continuing commercial relationship or arrangement in which the franchisor agrees to permit the franchisee to operate a business that is identified/associated with the franchisor's trademark or to sell or distribute goods, services, or commodities that are so identified/associated; 2) The franchisor exerts or has the authority to exert significant control over the franchisee's method of operation or provides significant assistance in the method of operation; and 3) The franchisee makes or agrees to make a payment to the franchisor as a condition of obtaining or commencing operation of the franchise.

Agreement, as a natural person, an independent contractor and not an agent or employee" of DAI. It required Watash to pay DAI a $7,500 franchise fee (or $1,000 if Watash already owned a Subway franchise) and a weekly royalty equal to 8 percent of the shop's gross sales; to pay 2.5 percent of the shop's gross sales into the Franchisee Advertising Fund; to maintain certain product standards; and to abide by DAI's policies and procedures for operating the shop. The agreement also required Watash to maintain specified insurance coverage "for the mutual benefit of the parties" and entitled DAI to monthly inspections of the business premises and specified business records.

The ALJ determined that the vast majority of DAI's business was to act as a franchisor who licensed others to operate Subway stores. Distinguishing the relationship of DAI and Watash from that of a contractor and subcontractor, the ALJ noted that the parties' agreement required Watash to pay DAI a fee rather than the reverse. The ALJ noted also that KRS 342.610 makes no reference to a franchisor-franchisee relationship and concluded that the statute imposed no liability on DAI for this claim.

## II. STATUTORY BACKGROUND.

Workers' compensation law is statutory. KRS 342.610 identifies those employers who are liable for workers' compensation benefits to employees who suffer work-related injuries or occupational diseases. It provides, in pertinent part, as follows:

(1) Every employer subject to this chapter shall be liable for compensation for injury, occupational disease, or death without regard to fault as a cause of the injury, occupational disease, or death.

(2) A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter.... A person who contracts with another:

(a) To have work performed consisting of the removal, excavation, or drilling of soil, rock, or mineral, or the cutting or removal of timber from land; or

(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business occupation, or profession of such person

shall for the purposes of this section be deemed a contractor, and such other person a subcontractor....

■ The purpose of KRS 342.610(2)(b) is to discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits.[3] KRS 342.610(2)(b) accomplishes its purpose by viewing an *up-the-ladder* contractor as being the employer of an uninsured subcontractor's employees, *i.e.*, their statutory employer. KRS 342.610(2) entitles a contractor who becomes liable for compensation to the employee of an uninsured subcontractor to recover both the amount paid and any necessary expenses from the subcontractor, who bears primary liability as the worker's direct employer. KRS 342.690(1) provides both direct and statutory employers with immunity from tort liability for work-related injuries.

---

**3.** *Elkhorn–Hazard Coal Land Corp. v. Taylor,*  539 S.W.2d 101, 103–04 (Ky.1976).

Incorporating principles found in Professor Larson's treatise[4] and in state and federal cases that construed KRS 342.610(2)(b), the Court explained in *General Elec. Co. v. Cain*[5] that

> Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. *Larson's, supra,* at § 70.06[10]. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

> The test is relative, not absolute. Factors relevant to the "work of the ... business," include its nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform. *Larson's, supra,* at § 70.06[5].

## III. ANALYSIS.

The Court of Appeals reversed the Board's opinion because it misapplied Chapter 342. The court determined that the ALJ committed a legal error by concluding that the General Assembly did not intend "for KRS 342.610 to encompass the relationship between a franchisor and a franchisee" simply because the statute failed to mention the relationship. We agree that the ALJ erroneously interpreted KRS 342.610. But we find that the error does not require reversal of the ALJ's ruling because the ALJ properly analyzed the facts of the case under the statute.

No Kentucky case addresses whether KRS 342.610(2) encompasses a franchisor-franchisee relationship. Like the Court of Appeals, we are not convinced that the statute's failure to mention such a relationship evinces intent by the General Assembly to preclude a franchisor from ever being considered the statutory employer of its uninsured franchisee's employee. DAI points to nothing, and we are aware of nothing, that prevents a franchisor who contracts with another for the performance of work that is "a regular or recurrent part of the work of the [franchisor's] trade, business, occupation, or profession" from being considered a "contractor" simply because the other party to the contract is its franchisee.[6]

Cases must be analyzed individually under KRS 342.610(2)(b) based on the particulars of the relationship at issue. A contractor that never performs a particular job with its own employees can still come within KRS 342.610(2)(b).[7] An arrangement must be viewed realistically in light of the business being conducted and the services being rendered rather than the labels or legal fictions the parties em-

---

4. ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW, § 70.06(2006).

5. 236 S.W.3d 579, 588 (Ky.2007).

6. Similarly, no statute prevents the offeror of a business opportunity as defined by KRS 367.801(5) who also comes within KRS 342.610(2)'s definition of a *contractor* from being considered a contractor for the purpose of imposing up-the-ladder liability.

7. *Fireman's Fund Ins. Co. v. Sherman & Fletcher,* 705 S.W.2d 459, 462 (Ky.1986).

ploy.[8] And contractually-required payments from the franchisee to the franchisor do not alone preclude a finding that the franchisor is a contractor under KRS 342.610(2)(b).

■ Although the ALJ erroneously interpreted KRS 342.610 as excluding all franchisors, the ALJ properly found, under the particular facts of this case, that DAI was not a contractor. Contrary to the UEF's claims, the opinions of both the ALJ and the Board included factual findings. The ALJ's opinion detailed the franchise agreement and stated that "[w]hile the argument of the UEF does point to some rights retained by the franchisor, such as the right to be named as an additional insured and be given notice of cancellation [of insurance] policies, this is clearly a much different arrangement than that which is contemplated in K.R.S. 342.610." The Board also stated that "the record contained evidence that DAI did not control the day to day activities of its franchisees" and that "DAI clearly is in the business of developing franchises for the purpose of securing royalties rather than actually operating sandwich shops."

■ The claimant in a workers' compensation case bears the burden of proof.[9] "In order to reverse the findings of the Board unfavorable to a claimant, the evidence must be so overwhelming as to compel a finding in his favor . . . ."[10] Here, the UEF is the claimant bearing the burden of

proof to show that DAI is a contractor subject to up-the-ladder liability. The ALJ and the Board found that DAI was in the business of franchising, not the business of selling sandwiches. So the franchisee did not perform a regular or recurrent part of DAI's business. Substantial evidence supported this finding, and we find that the evidence does not compel a finding for the UEF.

We reject the public-policy argument raised by amicus curiae that to permit a franchisor to be considered a contractor under any set of facts will "hobble the very aspect of franchising that has allowed it to contribute 176,000 jobs and billions of dollars to the Kentucky economy." Nothing prevents a franchisor from including in a franchise agreement a provision that requires the franchisee to maintain workers' compensation insurance at all times; to include the franchisor as a named insured; and to require the workers' compensation insurance carrier to provide the franchisor advance notice of expiration, cancellation, termination, or modification of the policy. Likewise, nothing prevents a franchisor from including a provision that permits the franchisor to inspect the franchisee's business records to be certain that insurance premiums are paid when due. Having included such provisions in a franchise agreement, the franchisor can protect itself by enforcing them.

For the foregoing reasons, the decision of the Court of Appeals is reversed; and

8. *See Brewer v. Millich,* 276 S.W.2d 12, 16 (Ky.1955) (the parties' real relationship determines whether a worker is an employee or an independent contractor for the purpose of coverage); *R.O. Giles Enter., Inc. v. Mills,* 275 S.W.3d 211 (Ky.App.2008) (a party cannot exempt itself from liability under KRS 342.610(2) by labeling its relationship to another party as being something other than that of a contractor and subcontractor).

9. *Williams v. White Castle Sys., Inc.,* 173 S.W.3d 231, 235 (Ky.2005) (citation omitted).

10. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418, 419 (Ky.1985) (citations omitted).

the Workers' Compensation Board opinion is affirmed.

All sitting. All concur.