# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 5, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000362-WC

UNINSURED EMPLOYERS' FUND                                    APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-1556-WC
WORKERS' COMPENSATION NO. 10-00493

DARLENE CROWDER;
PULASKI FRANCHISES, INC.;
QFA ROYALTIES, LLC.;
EUGENE DAVIS; JAMES DICK;
HONORABLE J. GREGORY ALLEN,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                  APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Uninsured Employers' Fund ("UEF"), appeals a Court of

Appeals decision which affirmed that Appellee, QFA Royalties, LLC, ("QFA") did

not have up-the-ladder liability for workers' compensation benefits paid to

Darlene Crowder, and that Appellees, Eugene Davis and James Dick, are also

not jointly and severally liable to pay for the benefits in question. For the

below stated reasons, we affirm the Court of Appeals.

On February 27, 2009, Davis and Dick purchased an existing Quiznos

sandwich shop in Somerset, Kentucky, from a third party. Davis purchased

45% of the business and was to participate in the day-to-day management of the Quiznos. Dick purchased the remaining 55% but was not active in management. Davis and Dick signed the transfer agreements and franchise agreement with QFA in their individual capacity. The franchise agreement required Davis and Dick to pay QFA a one time transfer fee of $12,500 and a monthly 7% royalty fee based on sales. Several days after signing the contracts, on March 2, 2009, Davis and Dick created Pulaski Franchises, Inc. ("Pulaski") for the purpose of owning and operating the Quiznos. Davis owned 45% of Pulaski and Dick 55%. However, the record indicates that neither the franchise agreement nor the assets of the restaurant were transferred into Pulaski's name. Nevertheless, all of the restaurant's cash flow was placed into accounts held by Pulaski. The employees' wages, taxes, and royalty payments to QFA were also paid from the Pulaski account.

Davis hired Tyler Hibbard to manage the Quiznos. Hibbard, in turn, hired Crowder to serve as his assistant. Crowder's first day of work was April 3, 2010. On April 15, 2010, she severely injured her left eye while working at the Quiznos. At the time Crowder suffered her work-related injury, the workers' compensation insurance for Quiznos, that was held in Pulaski's name, had lapsed. Crowder filed a Form 101 Application for Resolution of Injury Claim. QFA, Pulaski, Davis, and Dick were all joined as parties. The UEF was also joined as a party due to the lack of a workers' compensation insurance policy.

QFA's designated corporate representative, Lori Christensen, testified by deposition. She stated that QFA is in the business of licensing franchises and makes profit from the initial franchise fee and monthly royalties from its franchisees. Christensen testified that QFA has never owned or operated any Quiznos sandwich shops. However, another corporate entity which is part of the "Quiznos family" did briefly operate corporate owned restaurants. Christensen did testify that while QFA is not in the business of running the day-to-day operations of Quiznos restaurants, it did have an interest in making sure the individual franchises lived up to a certain standard to provide a consistent experience for its customers.

UEF filed a copy of the franchise agreement entered into between QFA, Davis, and Dick. The franchise agreement set out with great specificity the parties' rights and obligations with respect to operating the franchise. The franchise agreement stated that QFA must approve the location for the Quiznos, the lease, the type of equipment used, and the signage. The agreement also stated that the franchisees must comply with the operations manual which provided even greater detail into how the Quiznos must be managed. The operations manual gave rules on how many employees must be on duty at all times, what the daily hours of the restaurant must be, and how to make and wrap sandwiches, among other rules.

Davis testified that he was initially responsible for the day-to-day operation of the Quiznos, but hired Hibbard to take over all management duties. Davis stated that his primary employment was as a snack food

3

salesman. Dick testified that he was just a passive investor in the business and had no knowledge of the daily operations. However, there was no contract or agreement limiting Dick's involvement in the enterprise. His primary employment was as a funeral director. Both Davis and Dick testified that they set up Pulaski to own the Quiznos, but neither came up with a reason as to why the franchise was not transferred to the corporation. However, Davis stated that all of the Quiznos's receipts were placed into and payments were made out of an account in Pulaski's name. Neither Davis nor Dick knew that the workers' compensation coverage for Pulaski had lapsed.

ALJ Allison Jones entered an interlocutory opinion and order on December 6, 2012, on the bifurcated issues of whether QFA had up-the-ladder liability per KRS 342.610(2); whether Pulaski, Dick, or Davis was Crowder's employer; and whether QFA can be held liable if it did not have a written agreement with Crowder's employer. ALJ Jones found QFA was in the business of granting and overseeing franchise agreements, and that making and selling sandwiches to customers is not a regular and recurrent part of its business. She found that while QFA provides very detailed instructions to its franchises, it is not involved in operating or managing the stores. ALJ Jones found QFA's role in this matter was indistinguishable from the scenario in *Doctors' Associates, Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88 (Ky. 2011). ALJ Jones reasoned that QFA did not have up-the ladder liability, and dismissed it from the case. ALJ Jones then further found that Pulaski was Crowder's employer based on bank records and the parties' testimony. She

4

dismissed Davis and Dick from the claim. Thus, Pulaski would be responsible to repay the UEF for any workers' compensation benefits paid to Crowder.

The UEF filed a petition for reconsideration asking for additional findings of fact and conclusions of law on the question of whether Davis, Dick, and Pulaski were involved in a joint venture and were therefore jointly and severally liable. The elements essential to find that there was a joint enterprise/venture are: "1) an agreement, express or implied, among the members of the group; 2) a common purpose to be carried out by the group; 3) a community of pecuniary interest in that purpose among the members; and 4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Huff v. Rosenberg*, 496 S.W.2d 352 (Ky. 1973).

Applying the facts of this matter, ALJ Jones determined that Davis, Dick, and Pulaski were not involved in a joint enterprise/venture because the first, third, and fourth element of the *Huff* test were not satisfied. ALJ Jones found the first element was not satisfied because there was no agreement between Dick, Davis, and Pulaski to jointly operate and run the Quiznos. The third element was not satisfied because ALJ Jones found that there was no evidence the three parties shared profits from the Quiznos. Instead, ALJ Jones believed that all of the profits from the restaurant were treated as corporate profits and retained by Pulaski to put back into the business. Finally, ALJ Jones found that the fourth element was not satisfied because Dick testified that he was a passive investor and exercised no control over the business. The ALJ further

5

opined that the parties made a mutual mistake when Dick and Davis purchased the franchise in their personal capacity and not in Pulaski's name.

ALJ Gregory Allen was assigned to the matter after ALJ Jones was appointed to the Court of Appeals. He adopted ALJ Jones's findings regarding the parties' liability to pay Crowder's workers' compensation benefits. ALJ Allen then ordered Pulaski to reimburse UEF per KRS 342.760(4) for any benefits paid. He awarded Crowder temporary total disability benefits and permanent partial disability benefits enhanced by the three multiplier per KRS 342.730(1)(c)1. The Workers' Compensation Board ("Board") and Court of Appeals affirmed, and this appeal followed.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985).

6

# I. QFA DOES NOT HAVE UP-THE-LADDER LIABILITY TO REIMBURSE THE UEF FOR CROWDER'S WORKERS' COMPENSATION BENEFITS

UEF first argues that QFA should have up-the-ladder liability to pay for Crowder's workers' compensation benefits. UEF contends that QFA was a contractor and Davis, Dick, and Pulaski collectively served as a subcontractor, as a matter of law. It argues that QFA was as much in the sandwich selling business as Davis, Dick, and Pulaski, based on Christensen's testimony which indicated that QFA had an interest in making individual franchises succeed, and that the franchise agreement provided very specific instructions on how franchises must run their business. Because the UEF was unsuccessful before the ALJ and had the burden of proof regarding whether QFA has up-the-ladder liability, the question on appeal is if, upon consideration of the whole record, the evidence compels a finding in its favor. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (KY. App. 1984).

KRS 342.610(2) states, "A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in his chapter." Any person who contracts with another, "To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of [the statute] be deemed a contractor, and such other person a subcontractor." KRS 342.610(2)(b).

7

> Work of a kind that is a 'regular or recurrent part of the work of the trade, business, occupation, or profession' of an owner does not mean work that is beneficial or incidental to the owner's business or that it is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar business would normally perform or be expected to perform with employees.

*General Electric Co. v. Cain*, 236 S.W.3d 579, 588 (Ky. 2007). Nothing within KRS 342.610(2) precludes a franchisor, such as QFA, from being considered the statutory employer of its uninsured franchisee's employee. *Doctors' Associates, Inc.*, 364 S.W.3d at 92. Whether an individual or business has up-the-ladder liability is decided on a case by case basis. *Id.* at 89

In this matter, the ALJ's determination that QFA does not have up-the-ladder liability is supported by substantial evidence. The ALJ found that QFA is in the business of granting and overseeing franchisee agreements and that, unlike the Quiznos in Somerset, making and selling sandwiches to customers is not a regular and recurrent part of its business. This finding is supported by the fact that QFA did not actually operate any Quiznos restaurant. While the franchise agreement and operating manual do provide detailed instructions on how to manage the restaurants on a day-to-day basis, these guidelines were instituted to protect the brand which QFA sold. Keeping the brand strong is a critical part of QFA's purpose because it derives its revenue from franchise fees and royalties. Additionally, while the success of individual franchises does benefit QFA, its primary focus is making Quiznos franchises attractive to

investors. Thus, since QFA is not in the business of making and selling sandwiches to customers and the Quiznos in Somerset was engaged in that work, QFA cannot be considered the contractor, and does not have up-the-ladder liability in this matter.

## II. CROWER'S EMPLOYER IS PULASKI, THEREFORE DAVIS AND DICK ARE NOT JOINTLY AND SEVERALLY LIABLE TO PAY FOR HER WORKERS' COMPENSATION BENEFITS

UEF also argues that Davis and Dick are jointly and severally liable for Crowder's workers' compensation benefits because they were engaged in a joint venture with Pulaski to operate the Quiznos. UEF argues that Davis, Dick, and Pulaski had a common purpose to make money selling Quiznos sandwiches, and thus per the *Huff* test, they were engaged in a joint venture. However the UEF's focus on whether Davis, Dick, and Pulaski were involved in a joint venture is misplaced. Clearly, Davis and Dick were involved in a joint venture to make money from operating a Quiznos franchise and created Pulaski in an attempt to shield themselves from the liability of running such a business. *See* KRS 271B.6-220. The real question here is whether Pulaski is Crowder's employer despite the fact that Davis and Dick never transferred the assets and franchise agreement from the Quiznos to the corporation. If Pulaski is Crowder's employer, then Davis and Dick are shielded from being jointly and severally liable for the workers' compensation benefits.

KRS 342.640(1) defines employees as, "Every person including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and

assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer." Crowder was clearly under a contract of hire because she was asked by Hibbard to work for Quiznos. There is no evidence that Davis or Dick had any say in hiring Crowder and both testified that Pulaski was incorporated to operate the Quiznos. Crowder and Hibbard were paid from Pulaski's bank account and would have received worker's compensation benefits from an insurance policy held in Pulaski's name if it had not lapsed. Therefore, the ALJ's conclusion that Crowder was employed by Pulaski is supported by the record and shall not be disturbed on appeal. The fact that Davis and Dick never transferred the franchise agreement and restaurant assets into Pulaski's name does not change the fact that Pulaski was operating the restaurant on Davis and Dick's behalf. Pulaski is solely responsible to pay the UEF for Crowder's workers' compensation.

For the above stated reasons, we affirm the decision of the Court of Appeals.

All sitting. All concur.

10

COUNSEL FOR APPELLANT,
UNINSURED EMPLOYERS' FUND:

James Robert Carpenter


COUNSEL FOR APPELLEE,
DARLENE CROWDER:

McKinnley Morgan


COUNSEL FOR APPELLEE,
PULASKI FRANCHISES, INC.;
EUGENE DAVIS; JAMES DICK:

John G. Prather, Jr.
Arden Winter Robertson Huff


COUNSEL FOR APPELLEE,
QFA ROYALTIES, LLC:

Donald Cameron Walton, III
John Patterson

11