RENDERED: JULY 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2020-CA-0705-MR

KRISTIAN COLLINS                                                     APPELLANT

                    APPEAL FROM GRANT CIRCUIT COURT
v.                  HONORABLE R. LESLIE KNIGHT, JUDGE
                    ACTION NO. 19-CI-00254

MIAMI VALLEY PAPER TUBE CO.                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Kristian Collins appeals an order of the Grant Circuit Court dismissing her negligence action against Miami Valley Paper Tube Co. (Miami Valley) on the grounds of workers' compensation immunity.  Upon review, we affirm.

The circuit court dismissed Collins's action pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f). For purposes of a CR 12.02(f) motion, this Court, like the circuit court, must accept as true the plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968). As set forth in Collins's complaint, Miami Valley operates a facility in Grant County, Kentucky, where it manufactures spiral wound paper tubes and paper cores that are cut into various sizes for a variety of industrial uses. At all relevant times, appellant Kristian Collins was an employee of Crown Services, Inc. (Crown) and, pursuant to a "General Staffing Agreement" Miami Valley entered with Crown, Crown supplied Miami Valley with temporary employees, such as Collins. At Miami Valley's facility, Collins worked with some permanent employees of Miami Valley and was also supervised by Miami Valley's shareholders and officers.

On August 23, 2017, Collins was working on a cutting machine known as "Line 2," and another temporary employee was working on another known as "Line 3." While Line 2 was well guarded, Line 3 did not have a safety guard on the part of the machine known as the spindle. The employee working Line 3 did not know how to shut off the cutting machine, so Collins was attempting to instruct him as to the location of the shut-off switch while the machine was still running. Collins's hair then became entangled in the Line 3

cutting machine, which caused severe and permanent injuries, including a scalp avulsion and broken neck. Collins's injury triggered an inspection by OSHA[1] and Miami Valley was fined a significant sum as a result of its safety violations at the plant.

Collins filed a negligence action against Miami Valley in Grant Circuit Court. She claimed Miami Valley "had both a contractual and common law duty to provide adequate safety guards on the machinery" and "to properly supervise and train its employees and other temporary workers," and that Miami Valley's breach of those duties was the proximate cause of her injuries.[2]

As indicated, Miami Valley responded by filing a CR 12.02 motion to dismiss Collins's complaint. Its motion focused upon Collins's emphasis in her complaint that, pursuant to Kentucky Revised Statutes (KRS) 342.615(1)(e) and (f), she was a statutory employee of Crown, which had a statutory obligation to provide workers' compensation insurance for her and it did so, and the undisputed fact that Collins was awarded workers' compensation benefits from Crown due to her injury. In sum, Miami Valley argued that because Collins received those benefits, and because the applicable law regarded Crown as its subcontractor, it

---

[1] Occupational Safety and Health Administration.

[2] Collins also asserted but later voluntarily dismissed an intentional tort claim against Miami Valley.

was entitled to "up the ladder" immunity pursuant to the Kentucky Workers' Compensation Act, specifically KRS 342.610 and KRS 342.690. The circuit court agreed and granted Miami Valley's motion to dismiss.

We review dismissals under CR 12.02(f) *de novo*. *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011), *overruled on other grounds by Maggard v. Kinney*, 576 S.W.3d 559 (Ky. 2019). CR 12.02(f) is designed to test the sufficiency of a complaint. *Pike*, 434 S.W.2d at 627. It is proper to grant a CR 12.02(f) dismissal motion if:

> it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. . . . [T]he question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002) (internal quotation marks and citation omitted).

Collins essentially offers three arguments on appeal regarding why, in her view, Miami Valley was not entitled to "up the ladder" immunity. First, she asserts that her undisputed status as a temporary worker for a temporary help service at the time of the incident precluded Miami Valley from asserting that defense. Second, she argues the defense could not apply because she did not perform work at Miami Valley's facility on a regular and recurrent basis. Third, she argues an issue of fact existed regarding whether Miami Valley maintained a

-4-

policy of workers' compensation insurance that would have covered her at the time of her injury and that without proof of such coverage, Miami Valley was legally precluded from claiming the exclusive liability provisions of the Kentucky Workers' Compensation Act.

We disagree with Collins's first argument. "Up the ladder" immunity largely derives from the interrelation of two sections of Kentucky's Workers' Compensation Act, KRS 342.610(2) and KRS 342.690(1). The former, as paraphrased in *Fireman's Fund Insurance Company v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986), provides:

> (1) every employer subject to the chapter shall be liable for compensation for injury without regard to fault, (2) a contractor who subcontracts any part of his contract shall be liable for the payment of compensation to the employees of the subcontractor *unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided by Chapter 342*, and (3) a person who contracts with another to have work performed of a kind which is a regular or recurrent part of the work *of the trade, business, occupation or profession of such person*, shall be deemed a contractor and such other person a subcontractor.

The latter, KRS 342.690(1), provides in relevant part:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . on account of such injury . . . . For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the

subcontractor has in fact, secured the payment of compensation.

When read in conjunction, KRS 342.690(1) and KRS 342.610(2) provide "up the ladder" immunity to a contractor for injuries incurred by an employee of a subcontractor. In *U.S. Fidelity & Guaranty Company v. Technical Minerals, Inc.*, 934 S.W.2d 266 (Ky. 1996), the Kentucky Supreme Court held that a company that contracts with a temporary labor service for temporary employees qualifies as a "contractor" for purposes of KRS 342.610(2) and KRS 342.690(1), and is therefore entitled to the immunity provided by those sections.

Arriving at that conclusion, our Supreme Court explained at length that the term "contractor" in the Workers' Compensation Act has a broader meaning than that term's "common usage" – *i.e.*, the situation where a "principal contractor" engages subcontractors to assist in the performance of the work or the completion of the project which the "principal contractor" has undertaken to perform for another. *Technical Minerals*, 934 S.W.2d at 267-69. In other words, for purposes of the Act, "a person who engages another to perform a part of the work which is a recurrent part of his business, trade, or occupation is a contractor. Even though he may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." *Id.* at 269 (citation omitted).

The Court further explained:

While this is a case governed by principles of statutory construction, it is proper to consider whether the Legislature intended to adversely affect existing business enterprises. As a practical matter, if the statute here were construed to allow a common law civil action against an employer who obtains a temporary employee through a temporary services company, no employer in his right mind would hire such an employee. The effect of this would be to destroy the temporary services industry.

Historically, a major reason employers were willing to provide Workers' Compensation benefits was to be free of common law civil liability. By the argument of the plaintiffs in this case, such would be totally frustrated and the plaintiff would have the best of both worlds, Workers' Compensation benefits and a common law right of action. By contrast, the defendant/employer would have the worst of both worlds and this could not have been the legislative intent.

*Id*.

Collins argues the holding of *Technical Minerals* does not apply because the General Assembly enacted KRS 342.615 approximately one month after that case was decided. In relevant part, that statute provides:

(1) As used in this section:

. . .

(e) "Temporary worker" means a worker who is furnished to an entity to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions for a finite period of time; and

(f) "Temporary help service" means a service whereby an organization hires its

-7-

own employees and assigns those employees to clients for finite periods of time to support or supplement the client's workforce in special work situations, including employee absences, temporary skill shortages, and seasonal workloads.

. . .

(5) A temporary help service shall be deemed the employer of a temporary worker and shall be subject to the provisions of this chapter.

*Id.* Collins's argument is that the holding of *Technical Minerals* is inapplicable because a "specific" statute dealing with "temporary workers" (KRS 342.615) was subsequently enacted, which, in her view, now controls over the "general" contractor/subcontractor statute (KRS 342.610).

This argument has no merit, however, because nothing in KRS 342.615 conflicts with the core holding of *Technical Minerals*. When the General Assembly enacted KRS 342.615, it was clarifying who was responsible for workers' compensation coverage for "leased employees" from "employee leasing companies" and "temporary worker[s]" from "temporary help service[s]," and imposing registration requirements on "employee leasing compan[ies]." *See generally* KRS 342.615. This statute is not at odds with the Supreme Court's holding in *Technical Minerals* that a "temporary help service" is a "subcontractor" liable for providing workers' compensation benefits for its own employees and that a company that contracts with a temporary labor service for temporary employees

-8-

is a "contractor" for purposes of KRS 342.610(2) and KRS 342.690(1) and thus entitled to "up the ladder" immunity. *Technical Minerals*, 934 S.W.2d at 286.

Collins's second argument is that Miami Valley was not entitled to "up the ladder" immunity because she did not perform work at Miami Valley's facility on a regular and recurrent basis. According to Collins:

> A temp worker, employed by Crown, can hardly work on a "regular and sustained basis" if Miami Valley has the ability to terminate that person if it feels she cannot be a good permanent worker for the company. In short, temporary workers at Miami Valley were the equivalent of "walk ons" on a college football team. They were there for a "finite period of time" and could be cut from the team at 520 hours or less. If they made the team, they became permanent employees, but Ms. Collins never got to that point.

We disagree, and we adopt the succinct reasoning of the circuit in this respect as follows:

> This argument misreads KRS 342.610. The statute provides: "A person who contracts with another . . . [t]o have work performed *of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person* shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." (Emphasis added). This statute describes the relationship between Defendant (the "contractor") and Crown (the "subcontractor"). It does not describe the relationship between Crown's individual temporary employees (like Plaintiff) and a contractor like Defendant. Put differently, what matters is that the work Crown's employees did for Defendant was "a regular or recurrent part of [Defendant's] . . . trade, business, occupation, or profession," not whether the individual

-9-

temporary employees were a "regular or recurrent" part of Defendant's workforce.

> In *General Electric v. Cain*, 236 S.W.3d 579 (Ky. 2007), the Court defined "regular and recurrent" as work that is "customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Id.* at 588. "As long as the company contracts away a job it is expected to perform – even if it never actually performs the job – the company can be considered a 'contractor' that reassigned 'regular or recurrent work.'" *Boyd v. Doe*, No. 13-136-ART, 2014 WL 5307951, *2 (E.D. Ky. Oct. 15, 2014) (citing *Doctors' Assocs. Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88, 92 (Ky. 2011)). From the Complaint, it is apparent that Crown's employees were doing work of a kind that was "a regular or recurrent part of [Defendant's] . . . business."

(Internal footnotes removed; text of footnotes added to block quote.)

Lastly, Collins argues an issue of fact existed regarding whether Miami Valley maintained a policy of workers' compensation insurance that would have covered her at the time of her injury. She argues that without proof of such coverage, Miami Valley was legally precluded from claiming the exclusive liability provisions of the Kentucky Workers' Compensation Act.

This argument is also the subject of a motion Miami Valley filed with this Court to strike part of Collins's brief. In its motion, Miami Valley correctly noted that the circuit court dismissed Collins's action based upon the face of her

complaint pursuant to CR 12.02 – and not based upon the absence of any proof of a material fact, which would have necessitated review pursuant to CR 56. That said, Collins's argument lacks merit, and we have denied Miami Valley's motion by separate order as moot, because the "conflict in the evidence" identified by Collins does not relate to any *material* fact at issue in this appeal. To reiterate,

> [i]f a defendant qualifies as a contractor, "it has no liability in tort to an injured employee of a subcontractor." *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986). In other words, tort immunity under the Act extends "up the ladder" from the subcontractor that employs an injured person to the entities that contracted with the subcontractor, so long as the injured person's employer has workers' compensation coverage, and the up the ladder entities contracted "to have work performed of a kind which is a regular or recurrent part of the work" of their business. *See Goldsmith* [*v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 379 (Ky. 1992).]

*Cabrera v. JBS USA, LLC*, 568 S.W.3d 865, 869 (Ky. App. 2019).

As previously explained, Miami Valley qualified as a "contractor" pursuant to KRS 342.610(2), and Crown was its subcontractor. Crown employed Collins, who was injured while, pursuant to Crown's contract with Miami Valley, she was performing work that was a regular and recurrent part of Miami Valley's business. Crown provided Collins with workers' compensation coverage. Therefore, tort immunity under the Act extended "up the ladder" from Crown to Miami Valley. Simply put, that is the end of the inquiry.

-11-

We have addressed the breadth of Collins's appellate arguments. Finding no error, we affirm the Grant Circuit Court's dismissal of Collins's negligence action against Miami Valley.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ronald R. Parry
Cincinnati, Ohio

Philip Taliaferro, III
Colby Cowherd
Covington, Kentucky

BRIEF FOR APPELLEE:

Carmen Sarge
Matthew F.X. Craven
Cincinnati, Ohio