KRAMER, JUDGE:
Jorge Martell Cabrera asserted negligence and/or product liability claims against each of the above-captioned entities in Jefferson Circuit Court. Ultimately, the circuit court dismissed each of his claims on the grounds of either immunity or the applicable statute of limitations. He now appeals. Upon review, we affirm in part, reverse in part, and remand as set forth below.
The incident giving rise to this appeal is straightforward. As alleged in his complaint, on September 27, 2014, Cabrera was working in the course and scope of his employment sanitizing saddle tables in a pork processing facility located at 1200 Story Avenue, Louisville, Kentucky, when his right arm became entrapped in a conveying system, injuring him. Cabrera later filed a workers' compensation claim and received benefits. He then asserted several negligence and products liability claims in Jefferson Circuit Court against the above-captioned appellees based upon his injuries. After a period of motion practice, his claims were summarily dismissed.
The primary issue raised in this appeal, and the starting point of our analysis, is the more complicated matter of who Cabrera's "employer" was within the meaning of Kentucky's Workers' Compensation Act. This is because the circuit court dismissed most of Cabrera's claims after determining a number of the above-captioned appellees (i.e. , JBS USA, LLC, Swift Pork Company, Monfort, Inc., and Swift Beef Company) qualified as his statutory "employers," and were therefore entitled to workers' compensation immunity. See Kentucky Revised Statute (KRS) 342.690(1) (providing that where an employer secures payment of compensation as required by the Act, the employer is immune from tort liability to the employee). Cabrera argues the circuit court erred in this respect.
As to our standard of review, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. Scifres v. Kraft , 916 S.W.2d 779 (Ky. App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. Goldsmith v. Allied Bldg. Components, Inc. , 833 S.W.2d 378 (Ky. 1992). Likewise, we review the circuit court's interpretations of law de novo. Cumberland Valley Contrs., Inc. v. Bell Cty. Coal Corp. , 238 S.W.3d 644, 647 (Ky. 2007).
*869 We now proceed with the substance of this appeal. Cabrera has conceded that his claims against appellee Monfort Food Distribution Company were properly dismissed; accordingly, the circuit court's dismissal of his claims against that entity is affirmed. As to the remainder of our analysis, we have divided it to separately address the circuit court's overarching bases for disposing of Cabrera's claims: (1) workers' compensation immunity; (2) the applicable statute of limitations; and (3) an additional argument raised by the appellees that Cabrera has impermissibly split his cause of action.
I. Workers' Compensation Immunity
a. JBS USA, LLC (JBS)
It is beyond cavil that meat processing facilities are required to meet a multitude of state and federal regulations governing many aspects of their business, not the least of which relate to cleanliness and sanitation. In this vein, Cabrera's direct employer - and the entity that paid his workers' compensation benefits - was Packer's Sanitation Services, Inc., a company that specializes in providing sanitation services that ensure meat processing facilities comply with those regulations. When Cabrera sustained his injuries, he was performing those services on behalf of Packers; at a pork processing facility in Louisville that was operated by JBS; and pursuant to the terms of a contract for those services that Packers had entered with JBS.
As indicated, when the circuit court dismissed Cabrera's negligence and premises liability claims against JBS, its reasoning was based upon workers' compensation immunity - specifically, the "up-the-ladder" variety. To explain, the term "employer," for purposes of coverage under the Act and corresponding workers' compensation immunity, includes "contractors" which are defined by the Act in relevant part as follows: "A person who contracts with another ... (b) [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." KRS 342.610(2) ; see also KRS 342.690(1). If a defendant qualifies as a contractor, "it has no liability in tort to an injured employee of a subcontractor." Fireman's Fund Ins. Co. v. Sherman & Fletcher , 705 S.W.2d 459, 461 (Ky. 1986).
In other words, tort immunity under the Act extends "up the ladder" from the subcontractor that employs an injured person to the entities that contracted with the subcontractor, so long as the injured person's employer has workers' compensation coverage, and the up the ladder entities contracted "to have work performed of a kind which is a regular or recurrent part of the work" of their business. See Goldsmith , 833 S.W.2d at 379.
Cabrera contends the circuit court erred by deeming JBS an "up-the-ladder" contractor and thus his statutory employer for immunity purposes. In his words he argues that "there was no evidence that JBS USA employees ever performed this type of work [i.e. , sanitation services capable of ensuring the pork processing facility complied with state and federal regulations], there was no evidence that JBS USA employees were skilled/trained in the type of work being contracted, and there was no opportunity to conduct discovery on this issue."
But, whether JBS employees ever performed this type of work with its own employees or had employees skilled enough or trained to do it is not dispositive of this issue. Persons or entities who engage *870 another to perform a part of the work which is a recurrent part of their business, trade, or occupation are considered "contractors" under the Act even if they never perform that type of work with their own employees. Fireman's Fund , 705 S.W.2d at 462.
Moreover, no further discovery was needed to determine whether this type of work was "regular" or "recurrent." Within the meaning of the Act, " '[r]ecurrent' simply means occurring again or repeatedly." Daniels v. Louisville Gas and Elec. Co. , 933 S.W.2d 821, 824 (Ky. App. 1996) ; Pennington v. Jenkins-Essex Constr., Inc. , 238 S.W.3d 660, 664 (Ky. App. 2006). " 'Regular' generally means customary or normal, or happening at fixed intervals." Daniels , 933 S.W.2d at 824. See also General Elec. Co. v. Cain , 236 S.W.3d 579, 588 (Ky. 2007) ("It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law ) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." (Emphasis added.) )
Here, pursuant to the Packers-JBS contract, the sanitation services Cabrera was performing at the pork processing facility were recurrent (i.e. , they were performed daily at the end of processing operations). Likewise, they were regular ; as indicated and as Cabrera concedes in his brief, the recurrent sanitation work Cabrera was performing at the pork processing facility was required by law. Accordingly, the circuit court committed no error in dismissing Cabrera's claims against JBS based upon up-the-ladder immunity. We affirm.
b. Swift Pork Company (Swift Pork)
When the circuit court likewise dismissed Cabrera's claims against Swift Pork, it did so for the same reasons it dismissed Cabrera's claims against JBS, as set forth above. On appeal, Cabrera contends the circuit court erred in applying "up-the-ladder" immunity to Swift Pork. This is so, he argues in his brief, because "[i]t is undisputed that Swift Pork Company never employed Mr. Cabrera. Further, Swift Pork Company has never contracted with Mr. Cabrera's employer, Packers Sanitation. The Contract in this case was between 'JBS USA, LLC Pork Division' and 'Packers Sanitation Services Inc.' "
In making these arguments, however, Cabrera chooses form over substance. To begin, the Act
does not demand evidence of formal written contracts between a defendant and the plaintiff's direct employer for the defendant to have up-the-ladder immunity but, rather, shows that contracts might be found in this context when the facts show that the defendant is effectively functioning as the contractor ... even if the evidence would not establish a binding contract for purposes of a breach of contract action, for instance.... While we certainly do not ignore the statutory requirement of "contracts," we construe this term broadly in this context to ensure that workers' compensation coverage is provided allowing injured workers to recover benefits quickly without having to show fault.
Beaver v. Oakley , 279 S.W.3d 527, 534-35 (Ky. 2009) (footnotes omitted).
Rather, to demonstrate it was a "contractor" and thus entitled to "up-the-ladder" immunity, it was enough for Swift Pork to demonstrate that when JBS contracted with Packers, it did so as a representative and for the benefit of Swift Pork; and, that its omission from the contract *871 was merely a facet of the financial arrangement between itself and JBS. Id. at 532. See also Upper Elkhorn Coal Co. v. Thornberry , 564 S.W.2d 842, 843 (Ky. App. 1977) (deeming, for purposes of workers' compensation coverage, an appellant coal company the "employer" of a person injured while working to remove minerals pursuant to a coal lease because although the lease was purportedly to individuals acting as partners, their purpose in taking the lease was to secure production for the appellant, and the appellant accepted the benefits).
Here, the crux of what Swift Pork argued in favor of workers' compensation immunity was that, in contracting with Packers, JBS was acting as Swift Pork's representative and for Swift Pork's benefit. Upon review, we agree. To explain, JBS acquired Swift Pork in 2007, and JBS's and Swift Pork's joint corporate representative, Nicholas White, testified via deposition that Swift Pork is "a part of" JBS's business operations. To that end, apart from being JBS's wholly-owned subsidiary, Swift Pork shares with it the same chief executive officer, the same board of directors, and the same address for its corporate headquarters. Both entities are named insureds in the same policy of workers' compensation insurance.[1] Most importantly, by reason of corporate direction from JBS, Swift Pork was also the owner and joint operator of the pork processing facility[2] where and when Cabrera sustained his injuries.
Thus, the sanitation services provided to the pork processing facility benefitted the joint business operations of JBS and Swift Pork; and Packers' contract with JBS - as opposed to JBS and Swift Pork - was merely a facet of an overarching financial arrangement between JBS and Swift Pork: JBS was effectively representing Swift Pork's interests by hiring Packers to clean the pork processing facility they jointly operated. For parity of reasoning, see, e.g., Wright v. Dolgencorp, Inc. , 161 S.W.3d 341 (Ky. App. 2004) (explaining Dollar General and its wholly-owned subsidiary, Dolgencorp, Inc., were both entitled to up-the-ladder immunity from a tort action from an employee of a subcontractor injured at a distribution center, even though the subcontractor's contract was with Dollar General, and the distribution center was owned and operated by Dolgencorp.). See also Hensley v. First Healthcare Corp. , Nos. 2002-CA-001342-MR, 2002-CA-001387-MR, 2003 WL 22149385, at * 2 (Ky. App. Sept. 19, 2003) (unpublished)[3] (explaining subsidiary's obligation to perform at parent company's direction supplies "the functional equivalent of a contract and so would bring the Act's 'contractor' provisions into play. With those provisions the General Assembly has made clear its intention *872 that coverage under the Act not be thwarted by indirect modes of employment."). Accordingly, the circuit court committed no error in this respect. We affirm.
c. Monfort, Inc.
Monfort has been a wholly-owned subsidiary of JBS since 2007. At the time of Cabrera's injury, it had no association with the pork processing facility. However, according to John Jeffries, the pork processing facility's plant engineer who was deposed as one of JBS's corporate representatives,[4] Monfort operated the pork processing facility between 1992 and 1994, at a time when Monfort was the wholly-owned subsidiary of appellee Conagra, Inc. (an entity unrelated to JBS), and the plant was owned by appellee Swift Eckrich, Inc. (another of Conagra's subsidiaries). Jeffries further testified that sometime between 1992 and 1994 Monfort personnel had designed the conveyor system[5] and installed it at the pork processing facility. The appellees also represent that the conveyor system was, at some point in that time frame, fabricated and manufactured by Monfort and at a Monfort facility located in Greeley, Colorado.
When Cabrera named Monfort as a defendant in his suit, he alleged it had also "operated, owned, and maintained" the pork processing facility where he was injured. He alleged it had "negligently installed, designed, and maintained the conveying system that injured [him.]" He later amended his complaint to allege Monfort had negligently manufactured the conveying system.
As indicated, Monfort moved for summary judgment. As to why, it argued: "In this case, only the employer operates the plant and is responsible for the design and maintenance of the equipment. Therefore if workers' compensation coverage applies, Mr. Cabrera has no cause of action against JBS USA, LLC or its subsidiaries. "[6] (Emphasis added.)
Ultimately, the circuit court dismissed the breadth of Cabrera's claims against Monfort based upon what Monfort argued. In the relevant part of its order, the circuit court explained:
The manufacture of the conveyor system involved in Cabrera's injury is murky, but JBS has stipulated that its subsidiary, Monfort, was the manufacturer. KRS 342.700 permits third party liability, including product liability claims, only if there was "some person other than the employer." Borman v. Interlake, Inc. , 623 S.W.2d 912 (Ky. App. 1981). Furthermore, Cabrera's injuries were sustained within the course and scope of his employment, as opposed to a separate activity, which bars the dual capacity exception. Wymer v. JH Properties, Inc. , 50 S.W.3d 195 (Ky. 2001).
Now on appeal, Cabrera's contention of error with respect to Monfort is limited to what each of the appellees have stipulated was Monfort's role as the fabricator and manufacturer of the conveying system. Thus, to the extent Cabrera asserted any claims against Monfort outside of that alleged role, the circuit court's dismissal of those claims must be affirmed. See *873 Osborne v. Payne , 31 S.W.3d 911, 916 (Ky. 2000) ("Any part of a judgment appealed from that is not briefed is affirmed as being confessed."). In his appellate brief, Cabrera argues that Monfort's status as JBS's subsidiary does not, in and of itself, entitle Monfort to workers' compensation immunity. He further summarizes his argument as follows:
[U]p the ladder immunity should not apply because Monfort, Inc., was not a subsidiary of JBS USA at the time of Monfort's negligent manufacture of the conveyor in 1992-1994. At the time the conveying system was manufactured between 1992-1994, Monfort was an entity of Conagra. It is undisputed that in 1992-1994, JBS USA had no affiliation with Monfort Inc. or Conagra Inc., and was a separate and distinct entity.
Upon review, we agree the circuit court erred in this respect. To be sure, where a statutory employer is also a manufacturer of equipment used by its statutory employees, a statutory employee injured by that equipment in the course and scope of his or her work cannot sue the statutory employer in tort (i.e. , based upon the employer's "dual capacity" as a manufacturer). Rather, the statutory employee's exclusive remedy remains workers' compensation and the statutory employer remains immune from suit. See Borman , 623 S.W.2d at 913.
But, the rule set forth in Borman applies in the circumstance where one entity functions in two or more roles or capacities, such as "employer" and "manufacturer." It does not apply in cases "dealing with two separate entities." Id. And, despite currently being a wholly-owned subsidiary of JBS, Monfort and JBS are and have always been two separate entities. See Miller v. Paducah Airport Corp. , 551 S.W.2d 241, 242-43 (Ky. 1977). Indeed, a subsidiary's separate corporate identity "is not a legal coat" that its owner or owners can slip on or off at will. See Turner v. Andrew , 413 S.W.3d 272, 276 (Ky. 2013). Accordingly, Monfort's current status as JBS's subsidiary is largely meaningless: Unless Monfort qualified in its own right as Cabrera's employer or up-the-ladder contractor, it was not entitled to immunity from tort liability to its parent company's statutory employees for its own, independent acts of negligence. See Falk v. Alliance Coal, LLC , 461 S.W.3d 760, 766 (Ky. 2015) (discussing this rule in the context of a parent company's tort liability to employees of its subsidiary, despite the employees' receipt of workers' compensation benefits for the same injuries).[7]
With that said, Monfort has never argued that it qualified as Cabrera's statutory employer for purposes of up-the-ladder immunity. Monfort has always argued it was entitled to immunity because it is JBS's wholly-owned subsidiary and because the Act considers JBS to be Cabrera's statutory employer. For purposes of immunity, that is insufficient. Therefore, we reverse to this extent[8] and remand for *874 further proceedings not inconsistent with this opinion.
d. Swift Beef Company
In general, a mere change of a corporation's name does not create a new corporation, destroy the identity of the corporation, nor in any way affect the corporation's rights and obligations. See 18 C.J.S. Corporations § 143 ; 18A AM. JUR. 2d Corporations § 234. This, in turn, brings our analysis to the entity known as "Swift Beef Company" ("Swift Beef"). As the appellees have represented below and throughout their brief, Swift Beef has had at least two prior corporate names. While it was owned by Conagra, for example, it was known as "Conagra Beef Company." Prior to that, however, it was known as "Monfort, Inc." In fact, the appellees concede that Monfort - the entity discussed immediately above - is Swift Beef; the entities are one and the same, and JBS simply changed the name of that entity shortly after purchasing it.[9] ,[10]
Initially, Cabrera named Swift Beef as a defendant. He later agreed to dismiss Swift Beef from this litigation, and then amended his complaint to add Monfort as a defendant. Then, after he was informed by Monfort's corporate representative White that Swift Beef was Monfort, Cabrera sought to amend his complaint to rejoin Swift Beef as a defendant. Prior to reviewing his motion to rejoin Swift Beef, however, the circuit court had already summarily dismissed Cabrera's claims against Monfort. Because of that, the circuit court denied Cabrera's motion as moot. Swift Beef, it explained, would have no more liability than Monfort; and like JBS and Swift Pork, Monfort was entitled to workers' compensation immunity.
Cabrera now argues the circuit court erred in prohibiting him from rejoining Swift Beef. The appellees do not address this point in their brief. Considering our disposition of the circuit court's ruling with respect to Monfort, however, we agree with Cabrera. Accordingly, to the extent that Swift Beef and Monfort are one and the same entity and that Cabrera is limited to only one potential recovery based upon what has been previously discussed (i.e., the manufacture and fabrication of the conveyor system), we reverse and remand for further proceedings not inconsistent with this opinion.
II. Statute of Limitations
a. Conagra, Inc. (Conagra)
On September 2, 2016, Cabrera moved to file a third amended complaint that included Conagra as a defendant, explaining that during discovery JBS "recently disclosed another entity Conagra, Inc. that may have fault in this matter." From all appearances, what motivated Cabrera to file his motion was: (1) his discovery that Monfort was, several years before his injury, *875 formerly Conagra's wholly-owned subsidiary; and (2) a statement from JBS, which JBS made in a prior summary judgment motion, to the effect that Conagra had also owned the pork processing facility until December 24, 1990, and had later deeded it to its wholly-owned subsidiary, appellee Swift Eckrich. In sum, Cabrera sought to hold Conagra accountable for his premises liability claims based upon Conagra's former ownership of the facility, and also for his products liability claims based upon Conagra's former ownership of appellee Monfort.
Conagra moved for summary judgment shortly after the circuit court granted Cabrera's motion to amend. In support, it argued the one-year statute of limitations applicable to Cabrera's personal injury action ( KRS 413.140 ) had expired. Cabrera responded by arguing that the operative effect of CR 15.03 saved his complaint against Conagra from being untimely. Specifically, he argued Conagra was likely on notice of the claims asserted in this action because: (1) he had filed an entirely separate action in a separate division of Jefferson Circuit Court (styled Jorge Martell Cabrera v. Conagra Foods, Inc. , 15-CI-004950) asserting the same claims against one of Conagra's subsidiaries, Conagra Foods, Inc.; and (2) Conagra, he asserted, had a long history with JBS and Monfort.
Granting Conagra's motion, the circuit court explained that Cabrera had simply failed to identify a potential defendant within the limitations period, and that "Cabrera has given no explanation as to why he was unable to learn of Conagra's possible involvement within the limitations period." Cabrera argues the circuit court erred in this respect. We disagree.
As indicated, because his action against Conagra was not commenced within the applicable period of limitations, Cabrera's ability to maintain it depended upon whether his amended complaint related back to the filing of his original complaint. CR 15.03 provides, in relevant part, as follows:
(1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
(2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (a) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
Thus, under limited circumstances, CR 15.03 permits an untimely amended complaint to relate back to the original complaint and to avoid a statute-of-limitations defense. See Phelps v. Wehr Constructors, Inc. , 168 S.W.3d 395 (Ky. App. 2004). However, the requirements of CR 15.03 are strictly construed against the plaintiff. Id. at 397 (citing Reese v. Gen. Am. Door Co. , 6 S.W.3d 380, 383 (Ky. App. 1998) ). In that vein, the "should have known" notice referred to in CR 15.03(2)(b), which gave rise to the "identity of interest" exception, applies only where the plaintiff has mistakenly sued the wrong party and the correct party "knew or should have known" of that fact. See Schwindel v. Meade County , 113 S.W.3d 159 (Ky. 2003). Importantly, the "mere failure to identify a potential defendant within the limitations period ... is not the *876 sort of mistake contemplated by part (2)(b) of CR 15.03." Reese , 6 S.W.3d at 383-84 (citing Nolph v. Scott , 725 S.W.2d 860 (Ky. 1987) ).
Here, Cabrera offered no assertion that his failure to name Conagra prior to this third amended complaint was due to either a misnomer or misidentification of the correct party. And, Cabrera did not seek to correct a misnamed defendant or exchange one party for another. Rather, he asked the circuit court to allow the addition of a party after the limitations period had run. As the circuit court and his own motion indicated, his failure to timely add Conagra occurred due to his own lack of knowledge, within the applicable limitations period, of what he came to believe was Conagra's potential liability. Accordingly, the circuit court committed no error; it correctly determined CR 15.03 did not apply. We affirm.
b. Swift Eckrich, Inc. (Swift Eckrich)
Appellee Swift Eckrich remains a wholly-owned subsidiary of appellee Conagra and was the entity that owned the pork processing facility until June 27, 2001, the date that the facility was deeded to Swift & Company (e.g. , Swift Pork). On August 4, 2016, Cabrera moved to file a second amended complaint adding Swift Eckrich as a defendant, explaining that JBS "recently disclosed another Swift entity, Swift Eckrich, Inc., that may have fault in this matter." In that respect, Cabrera referenced a summary judgment motion from JBS which he claimed was the first instance where anyone had informed him that Swift Eckrich had owned the pork processing facility and had owned it specifically when the conveyor was installed on the premises. The circuit court granted his motion.
Thereafter, Swift Eckrich moved for summary judgment based upon the expiration of the applicable statute of limitations. Cabrera, in turn, responded by arguing the statute of limitations had been effectively tolled by virtue of KRS 413.190(2), which provides:
When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced. But this saving shall not prevent the limitation from operating in favor of any other person not so acting, whether he is a necessary party to the action or not.
In particular, Cabrera pointed to an email his counsel had received from JBS's counsel on September 11, 2015 (i.e. , shortly after he filed his initial complaint, and roughly two weeks before the statute of limitations expired), relating to the ownership of the pork processing facility in 1992-1993 when the conveying system was installed. In relevant part, the email stated:
Doug,
The website says that this company was founded in 98 but the GM of the plant says that it was installed in 92-93. I will try to get more clarification on that. You also know that JBS was not the owner at that time. At the time, it was owned by Monfort, Inc. if that helps identify who made the order. Monfort appears to be a JBS acquisition, too.
Craig
In short, Cabrera argued that this email qualified as a "means" of obstructing the prosecution of his action, as contemplated by KRS 413.190(2). The circuit court nevertheless dismissed his claims against Swift Eckrich. Cabrera now appeals. But, because we agree with the *877 circuit court's result and reasoning, we adopt it as follows:
Swift Eckrich was the owner of the property from 1990 to 2001 as reflected by the deed of record with the Jefferson County Clerk's office. While Cabrera argues KRS 413.190(2) tolls the statute of limitations based on Defense counsel's assertion that Monfort owned the plant at the time, some affirmative act of concealment or obstruction is required. It is difficult to show Swift Eckrich affirmatively concealed its ownership of the plant, and therefore potential liability for Cabrera's injuries, when it was a matter of public record.[11 ] An injured person has a duty to investigate within the limitations period to discover potential tortfeasors. Combs v. Albert Kahn Associates, Inc. , 183 S.W.3d 190, 199 (Ky. App. 2006).
To the extent that more on this subject needs to be said, Kentucky law is clear that under a theory of either statutory or equitable estoppel, Cabrera was required to demonstrate not only a lack of knowledge, but "of the means of knowledge of the truth as to the facts in question[.]" Fluke Corp. v. LeMaster , 306 S.W.3d 55, 62 (Ky. 2010) (citations omitted). Here, Cabrera undisputedly had the means - namely, the public record - and he failed to do so. Therefore, his claim against Swift Eckrich was, as the circuit court held, untimely. We affirm.
III. Claim Splitting
As discussed, Cabrera filed a concurrent suit in another division of Jefferson Circuit Court (15-CI-004950), asserting all of the same claims there as he did here, but solely against another entity, Conagra Foods, Inc. That concurrent suit has never been consolidated with this matter; in that concurrent suit, he received a default judgment; and, due to that default judgment, the appellees argue that principles of res judicata (specifically the prohibition of "claim splitting") prevent Cabrera from recovering at all in this matter.
From all appearances, the circuit court did not address this argument below. Nor, for that matter, will we. To have any operative effect, the doctrine of res judicata requires "an existing final judgment rendered upon the merits[.]" See Yeoman v. Commonwealth, Health Policy Bd. , 983 S.W.2d 459, 464 (Ky. 1998) (quoting 46 AM. JUR. 2d § 514). Here, the appellees have not directed our attention to any final judgment rendered upon the merits of that case. To the contrary, they represent in their brief that "[a]lthough the default judgment has been entered against Conagra Foods, issues of apportionment as to other parties, including [Cabrera], and damages, are currently scheduled for trial on August 27, 2018, in Division 4 of the Jefferson Circuit Court." Accordingly, we need not address this point further.
CONCLUSION
In light of the foregoing, the judgment of the Jefferson circuit court is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED as set forth above.
ALL CONCUR.

As an exhibit to the reply they filed in favor of their summary judgment motion, JBS and Swift Pork included information from the Department of Workers' Claims detailing their workers' compensation policy with American Zurich Insurance Company. Specifically, it identifies one of the insured locations as the pork processing facility at issue in this matter; and among the named insureds, it identifies "JBS USA INC;" "JBS USA LLC;" "JBS USA LLC FKA SWIFT & CO;" and "SWIFT AND CO." It is undisputed that Swift Pork was "Swift & Company" prior to changing its corporate name.

The deed to the pork processing facility was filed of record and "Swift & Company" is the named fee simple owner. As discussed, Swift Pork was Swift & Company prior to changing its corporate name, and its ownership is undisputed.

We find Hensley persuasive authority in this respect and proper to cite as it fulfills the criteria of Kentucky Rule of Civil Procedure (CR) 76.28(4)(c).

White, JBS's other corporate representative, could neither confirm nor deny Monfort's status as the operator of the pork processing facility during this period.

Jeffries identified the designer as Keith Strunk, the pork processing facility's plant manager during that period.

This statement, which appears in the appellees' brief and also on page nine of Monfort's memorandum in support of renewed motion for summary judgment , filed below, is the most succinct explanation of Monfort's argument.

A minority of jurisdictions have applied what is generally referred to as "insider reverse piercing" to allow parent and subsidiary entities to disregard their individual existences and be viewed as a singular employer for purposes of receiving the benefit of workers' compensation immunity, particularly where one of those entities manufactures a product that is used by an employee of the other entity in the course and scope of his or her work and it causes the employee to sustain an injury otherwise covered by workers' compensation. See, e.g., Wells v. Firestone Tire and Rubber Co. , 421 Mich. 641, 364 N.W.2d 670 (1984). The appellees do not ask this Court to apply that doctrine here; nor has that doctrine been applied in Kentucky. See Turner v. Andrew , 413 S.W.3d 272, 277 (Ky. 2013).

As dicta , we note any recovery Cabrera could receive from Monfort would be limited by KRS 342.700(1), which "precludes double recovery by the employee and does not condition that preclusion upon whether the employer actually pursues its subrogation right." Krahwinkel v. Commonwealth Aluminum Corp. , 183 S.W.3d 154, 158 (Ky. 2005).

Monfort also produced and included with the appellate record corporate filings that illustrate its various name changes.

On page 6 of his brief, Cabrera insinuates the appellees' corporate representative, Nicholas White, testified that Swift Beef owns Monfort. This is a mischaracterization. The testimony Cabrera cites to that effect was as follows:
Q: All right. And so let's talk about Monfort, Inc. for a few minutes. Is Monfort, Inc., currently an active, ongoing company?
WHITE: Yes.
Q: And who currently owns Monfort, Inc.?
WHITE: The stock of Monfort, Inc., the equity of Monfort, Inc., which is today known as Swift Beef Company, is owned by JBS USA Food Company.

As dicta , we note it is also unclear how, under Cabrera's theory, Swift Eckrich as opposed to JBS could have obstructed Cabrera's action. While JBS's counsel, Craig Reinhardt, later came to represent all of the above-captioned appellees, he represented only JBS at the time of his email. According to the evidence of record, Swift Eckrich and JBS are separate entities with no affiliation with one another.