RENDERED: NOVEMBER 3, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1200-MR

DELANNA MILLER,
INDIVIDUALLY; AND AS
ADMINISTRATOR OF THE ESTATE
OF JUSTIN MILLER; AS LEGAL
GUARDIAN OF KYNDELL ELAINE
MILLER, A MINOR; AND AS LEGAL
GUARDIAN OF JUSTIN WAYNE
MILLER, A MINOR                                                        APPELLANT


                         APPEAL FROM BREATHITT CIRCUIT COURT
v.                       HONORABLE LISA HAYDEN WHISMAN, JUDGE
                         ACTION NO. 17-CI-00087


KENTUCKY POWER COMPANY
D/B/A KENTUCKY POWER; AEP
KENTUCKY POWER, ASSUMED
NAME CORPORATION OF
KENTUCKY POWER COMPANY;
AMERICAN ELECTRIC POWER, AN
ASSUMED NAME CORPORATION
OF KENTUCKY POWER COMPANY;
ASPLUNDH TREE EXPERT CO.;
AND KENTUCKY POWER,
ASSUMED NAME CORPORATION
OF KENTUCKY POWER COMPANY                                              APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE: Delanna Miller appeals from the Breathitt Circuit Court's grant of summary judgment in favor of Kentucky Power Company based on up-the-ladder immunity. We affirm.

## FACTS

Justin Miller was tragically electrocuted and killed while trimming a tree away from an electric utility's right of way. He was working as an employee of Asplundh Tree Expert Company ("Asplundh"). Asplundh performed tree trimming right of way maintenance work pursuant to a contract with Kentucky Power Company ("Kentucky Power").

Delanna Miller ("Miller") is the widow of Justin Miller. As the administrator of her husband's estate, Miller filed and settled a workers' compensation claim with Asplundh. Miller also filed suit against Kentucky Power, in her individual capacity and as administrator of the estate and the guardian of minor children, asserting claims for wrongful death and for loss of consortium.

Kentucky Power filed a motion for summary judgment, arguing it was entitled to up-the-ladder immunity. It cited undisputed evidence of its own and Asplundh's workers' compensation coverage and of its contract with Asplundh –

-2-

for Asplundh to perform tree trimming right of way maintenance work (also called line clearance) for Kentucky Power. Kentucky Power further argued that the tree trimming right of way maintenance work performed by Asplundh was a regular or recurrent part of its business. It asserted that vegetation management to further safety and prevent outages was required by law and cited evidence that the tree trimming right of way maintenance work was generally performed several times per week year-round barring inclement weather.

In response, Miller asserted that Kentucky Power could not prove that it would normally perform or be expected to perform the tree trimming work with its own employees. Miller pointed to testimony that Kentucky Power's own employees did not perform this type of tree trimming work and that other electric utilities also did not perform this kind of work with their own employees. She argued Kentucky Power could not show the work was a regular or recurrent part of its business as defined by *General Electrical Company v. Cain*, 236 S.W.3d 579 (Ky. 2007):

> Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of

regularity, **and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees**.

*Id.* at 588 (emphasis added) (citation omitted).

Despite Miller's arguments, the trial court granted Kentucky Power's motion for summary judgment. It cited another portion of *Cain* in which our Supreme Court defined *regular* as meaning a "customary, usual or normal part" of the business "including work assumed by contract or required by law" and *recurrent* as meaning "repeated though not with the preciseness of a clock."

The trial court recognized that it was undisputed that Kentucky Power never performed the tree-trimming right of way maintenance work with its own employees. But the trial court viewed the question of whether a business ever performed the work at issue with its own employees as only one factor to consider in determining whether up-the-ladder immunity applied.

The trial court further noted precedent stating that the fact that a business may never use its own employees to perform the work at issue does not necessarily preclude up-the-ladder immunity. Specifically, it quoted *Cabrera v. JBS USA, LLC*, 568 S.W.3d 865 (Ky. App. 2019):

> whether JBS employees ever performed this type of work with its own employees or had employees skilled enough or trained to do it is not dispositive of this issue. Persons or entities who engage another to perform a part of the work which is a recurrent part of their business, trade, or occupation are considered "contractors" under the Act

-4-

> even if they *never* perform that type of work with their own employees.

*Id*. at 869-70 (citing *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986)).

The trial court determined that the tree trimming line clearance work at issue was recurrent because it was performed frequently[1] and that it was regular because it was required by law.[2] So, it concluded that this work was a regular or recurrent part of the work of Kentucky Power's business and that Kentucky Power was therefore entitled to up-the-ladder immunity.

Miller then filed the appeal before us now[3] in a timely manner. She contends that *Fireman's Fund* was modified by *Cain* and that *Cabrera* (decided by this Court) is inconsistent with Kentucky Supreme Court precedent including *Cain*.

---

[1] The trial court characterized the tree-trimming right of way maintenance work as being performed daily. Based on our review of the record, testimony indicated that such tree trimming right of way maintenance work was performed several times per week year-round barring inclement weather – if not technically daily, nearly so. Miller does not dispute that this type of work was performed on a frequent basis.

[2] In concluding the work at issue was required by law, the trial court cited Section 3 of 807 Kentucky Administrative Regulations ("KAR") 5:041 as requiring electric utilities to comply with the National Electric Safety Code ("NESC"). And it quoted Section 218 of the NESC: "vegetation that may damage ungrounded supply conductors should be pruned or removed." (Record ("R."), p. 617). Miller does not appear to dispute that Kentucky Power was required by law to manage vegetation around its distribution lines.

[3] Miller had filed an earlier appeal (No. 2022-CA-0325-MR). The trial court's initial order granting summary judgment in Kentucky Power's favor stated the order was "final and appealable"; however, this initial order granting summary judgment did not adjudicate Kentucky Power's third-party claim against Asplundh nor did it state there was no just cause for delay. Thus, we determined that the order initially granting summary judgment was an interlocutory,

-5-

She further contends that Kentucky Power cannot show that it would normally perform or be expected to perform the work at issue with its own employees – so she argues this work was not a regular or recurrent part of its business as defined by *Cain*. Therefore, she asserts that Kentucky Power is not entitled to up-the-ladder immunity and that the summary judgment in its favor was improperly granted.

## ANALYSIS

### Standard of Review

In reviewing the trial court's grant of summary judgment, "we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Cabrera*, 568 S.W.3d at 868. We do not defer to the trial court's decision to grant summary judgment since "summary judgment involves only questions of law and not the resolution of disputed material facts" and we review the trial court's interpretation of the law *de novo*. *Id.*

Furthermore, in reviewing the trial court's grant of summary judgment *de novo*, an appellate court "must also view the record in a light most favorable to

non-appealable order. *See* Rules of Civil Procedure ("CR") 54.01; CR 54.02(1). So, we concluded we lacked jurisdiction and entered an order dismissing the appeal in No. 2022-CA-0325-MR. The present appeal, on the other hand, is undisputedly taken from a final and appealable order.

the nonmoving party and resolve all reasonable doubts in that party's favor." *A.H. v. Louisville Metro Government*, 612 S.W.3d 902, 908 (Ky. 2020) (citing *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991)).

Despite the non-deferential standard of review, we discern no reversible error in the trial court's grant of summary judgment.

**Trial Court Properly Concluded Kentucky Power Was Entitled to Up-the-Ladder Immunity**

KRS[4] 342.610(1) states: "Every employer subject to this chapter shall be liable for compensation for injury, occupational disease, or death without regard to fault as a cause of the injury, occupational disease, or death." And KRS 342.610(2)(b) defines an employer subject to such workers' compensation liability as including a contractor who subcontracts any part of a contract "to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person[.]"

Pursuant to KRS 342.690 (Exclusiveness of liability), statutory employers who are subject to workers' compensation liability under KRS 342.610(2) – including contractors who subcontract out regular or recurrent work of their business – are not subject to any other form of liability for work injuries if they secure payment for workers' compensation:

---

[4] Kentucky Revised Statutes.

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation. The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employee of such employer arising out of and in the course of employment and caused by a breach of any duty or obligation owed by such employer to such other shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter on account of such injury or death, unless such other and the employer by written contract have agreed to share liability in a different manner.

KRS 342.690(1).

Construing together KRS 342.610 and KRS 342.690, employers subject to workers' compensation liability who secure payment for workers' compensation are immune from other, non-workers' compensation claims for work injuries. This immunity is often referred to as "exclusive remedy" immunity. A party asserting entitlement to exclusive remedy immunity bears the burden of proving this affirmative defense. *See Cain*, 236 S.W.3d at 585 ("[A] premises

-8-

owner who asserts exclusive remedy immunity must both plead and prove the affirmative defense.").[5]

Such exclusive remedy immunity from tort claims for work injuries extends "up-the-ladder" from subcontractors directly employing workers to qualifying contractors:

> the term "employer," for purposes of coverage under the Act and corresponding workers' compensation immunity, includes "contractors" which are defined by the Act in relevant part as follows: "A person who contracts with another . . . (b) [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." KRS 342.610(2); *see also* KRS 342.690(1). If a defendant qualifies as a contractor, "it has no liability in tort to an injured employee of a subcontractor."
>
> In other words, tort immunity under the Act extends "up the ladder" from the subcontractor that employs an injured person to the entities that contracted with the subcontractor, so long as the injured person's employer has workers' compensation coverage, and the up the ladder entities contracted "to have work performed of a kind which is a regular or recurrent part of the work" of their business.

---

[5] Based on our review of the record, Kentucky Power pled the affirmative defense of exclusive remedy immunity pursuant to KRS 342.290. And Miller does not assert it failed to plead this affirmative defense in her appellate briefs.

*Cabrera*, 568 S.W.3d at 869 (footnote and citations omitted).[6] *Accord Cain*, 236 S.W.3d at 585.

There appears to be no dispute that Kentucky Power contracted with Asplundh to have the tree trimming work performed or that both Kentucky Power and Asplundh had workers' compensation coverage. However, the parties dispute whether this work performed by Asplundh was a regular or recurrent part of the work of Kentucky Power's business.

Miller quotes language from Kentucky Supreme Court precedent indicating that the "regular or recurrent" work of a business in this context entails work that the business's employees would normally perform or would be expected to perform. *See Cain*, 236 S.W.3d at 588. She cites evidence in the record casting doubt on whether the tree trimming work at issue here would normally be performed or be expected to be performed by Kentucky Power's employees. For example, she points to testimony from Kentucky Power representatives that the tree trimming work at issue here was never performed by Kentucky Power employees but instead by subcontractors' employees. She also cites testimony about other electric utilities also subcontracting out such tree trimming work rather

---

[6] Our Supreme Court discussed public policy considerations for extending tort immunity to statutory employers subject to workers' compensation liability in *Falk v. All. Coal, LLC*, 461 S.W.3d 760, 765 (Ky. 2015) (noting purpose of workers' compensation laws to allow injured workers to obtain benefits without having to prove fault while employers who agree to pay such benefits receive tort immunity; also recognizing this immunity extends to contractors and carriers who are also actually or potentially liable for workers' compensation benefits).

-10-

than expecting their own employees to perform this work – perhaps suggesting an industry-wide practice. She further points to testimony showing that Kentucky Power employees did not actively supervise or manage the vegetation management right of way work performed by Asplundh other than perhaps to direct that such vegetation management be scheduled for certain areas.

Construing this evidence in the light most favorable to Miller, perhaps this evidence indicates the tree trimming work would not normally be performed by or be expected to be performed by Kentucky Power employees. Nonetheless, we conclude that the trial court did not err in determining that Kentucky Power was entitled to summary judgment based on up-the-ladder immunity under the largely undisputed facts here.

As we recently stated in *Cabrera*, "Persons or entities who engage another to perform a part of the work which is a recurrent part of their business, trade, or occupation are considered 'contractors' under the Act even if they *never* perform that type of work with their own employees." 568 S.W.3d at 869-70, (citing *Fireman's Fund*, 705 S.W.2d at 462). *See also Pennington v. Jenkins-Essex Const., Inc.*, 238 S.W.3d 660, 664 (Ky. App. 2006), *disc. review denied* (Dec. 12, 2007) (citing *Fireman's Fund*, 705 S.W.2d at 461-62).

Further, we reject Miller's argument that *Cain* modified *Fireman's Fund*. Our Supreme Court quoted *Fireman's Fund*, 705 S.W.2d at 462 in *Cain*,

236 S.W.3d at 586 (subcontractor's employee performing rough carpentry in *Fireman's Fund* was considered statutory employee of premises owner/contractor in building construction business because "rough framing carpentry is work of a kind which is a regular or recurrent part of the work of the business of building construction"). But our Supreme Court did not expressly state in *Cain* that it was disturbing any holding in *Fireman's Fund*.

In fact, our Supreme Court again cited *Fireman's Fund* in a case rendered a few years after *Cain* to state that: "A contractor that never performs a particular job with its own employees can still come within KRS 342.610(2)(b)." *Doctors' Associates, Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88, 92 (Ky. 2011). And our Supreme Court was certainly aware of and even quoted *Cain* in *Doctor's Associates*. 364 S.W.3d at 92 (quoting *Cain*, 236 S.W.3d at 588) (including within a description of what regular or recurrent work of a business entails: "[I]t is of a kind that the business or similar businesses would normally perform or be expected to perform with employees. The test is relative, not absolute.").

In light of our Supreme Court's similar reliance on *Fireman's Fund* in *Doctor's Associates*, our opinion in *Cabrera* relying on the *Fireman's Fund* rule is

not inconsistent with binding Supreme Court precedent.[7]  Thus, we discern no error in the trial court's relying on *Cabrera* as binding precedent from this Court.

Furthermore, as discussed by the trial court, the evidence undisputedly showed the work at issue was repeated frequently and required by law.  Thus, this undisputed evidence showed the work met definitions of regular or recurrent work in *Cain*, 236 S.W.3d at 586-87; *Daniels v. Louisville Gas and Elec. Co.*, 933 S.W.2d 821, 824 (Ky. App. 1996); and *Cabrera*, 568 S.W.3d at 870.

We welcome further clarification from our Supreme Court concerning the proper application of language in *Cain* about how expectations about whether the work would normally be performed by a business's own employees should play a part in determining whether the work at issue is a regular or recurrent part of the business's work.

As Miller points out, some recent opinions from a federal court construing Kentucky law and from our Supreme Court may appear to require consideration of expectations about whether the work would normally be performed by the business's own employees to determine questions of up-the-

---

[7] Arguably, some may perceive the language in *Doctor's Associates* that a contractor who never performs a task with its own employees may still come within KRS 342.610(2)(b) to be inconsistent with language in *Cain* stating that the regular or recurrent work of a business is work which would normally be performed by the business's own employees.  To the extent there is inconsistency between *Cain* and *Doctor's Associates*, we must give more weight to *Doctor's Associates* as it is the more recent decision.  *See, e.g.*, 5 Am. Jur. 2d *Appellate Review* § 518 (2023) ("If decisions of the state supreme court are inconsistent, lower courts will follow the state supreme court's most recent pronouncement.").

ladder immunity.  *See Black v. Dixie Consumer Products LLC*, 835 F.3d 579, 585 (6th Cir. 2016) (interpreting *Cain* as establishing a three-part test for determining whether up-the-ladder immunity applies, including an inquiry into whether the work was "work that Dixie or similar businesses would normally perform or be expected to perform with employees").[8] *See also Tryon Trucking, Inc. v. Medlin*, 586 S.W.3d 233, 239 (Ky. 2019) (noting *Cain* definition of regular or recurrent work of a business including provision that "it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees").

Miller also contends that *Medlin* indicates it is necessary to establish the business's own employees would have the equipment, training, skills, and capability to perform the work to show that the work is a regular or recurrent part of the work of the business.  *See id*. at 240-41.

In response, Kentucky Power asserts that the work at issue in *Black* and *Medlin* and *Cain* was not work required by law – unlike *Cabrera* in which the injured worker had been performing sanitation services required by law in a meat packing plant.  568 S.W.3d at 869.  In *Cabrera*, we quoted *Cain*'s language about consideration of whether the work would normally be performed or be expected to be performed by the business's own employees.  568 S.W.3d at 870.  But we did

---

[8] Of course, we are not bound by a federal court's interpretation of Kentucky state law.

not expressly discuss any evidence in this regard. And we ultimately upheld the trial court's conclusion that the sanitation work was a regular or recurrent part of the work of the meat packing plant's business and the trial court's dismissal of claims against JBS based on up-the-ladder immunity. *See id*. at 869-70.

Kentucky Power suggests that *Cabrera* indicates that proving the work would normally be performed or be expected to be performed by the business's own employees is not required to show regular or recurrent work if the work is required by law. However, *Cain* does not expressly address if consideration of any expectations that the work would normally be performed by the business's own employees is necessary when the work is required by law – possibly because the work at issue there was not required by law. *See* 236 S.W.3d at 587-88 (summarizing relevant inquiries for determining whether work at issue is part of the regular or recurrent work of a business); 236 S.W.3d at 589-604 (describing facts of work at issue in individual cases discussed in *Cain* opinion).

Miller points out that the work at issue in *Medlin* and *Black* was required by contract. *See Medlin*, 586 S.W.3d at 235-36; *Black*, 835 F.3d at 585. So, the work at issue in these cases clearly qualifies as regular in the sense of being required by contract. But *Medlin* and *Black* still call for consideration of whether the work would normally be expected to be performed by the business's own

employees to determine if it was part of the regular or recurrent work of the business.

Nonetheless, we construe *Cain* and *Cabrera* together with other published precedent from Kentucky appellate courts discussed herein to support the trial court's conclusion that the work here qualified as regular or recurrent work and that Kentucky Power was entitled to up-the-ladder immunity. For example, we perceive the overarching gist of *Cain* to be that construction or demolition projects are generally not considered to be part of the regular or recurrent work of a premises owner's business in most circumstances whereas routine maintenance is generally considered regular or recurrent work of a premise owner's business in most circumstances. *Cain*, 236 S.W.3d at 588. And the tree trimming right of way maintenance work performed by Asplundh certainly appears to be more akin to routine maintenance than major construction or demolition projects.

Furthermore, this Court has construed *Cain* as not setting forth a new test for up-the-ladder immunity but merely summarizing the same test set forth in prior precedent. In fact, in a decision rendered after *Cain*, we expressly rejected the argument that a contractor must show both that 1) the work was both "customary to the business or repeated with a degree of regularity" (*i.e.*, regular or recurrent) and 2) "of a kind normally performed or expected to be performed by

employees" to qualify for up-the-ladder immunity. *Forbes v. Dixon Elec., Inc.*, 332 S.W.3d 733, 738 (Ky. App. 2010), *disc. review denied* (Mar. 16, 2011).

In sum, the trial court properly applied binding precedent in concluding there were no genuine issues of material fact and that Kentucky Power was entitled to summary judgment on the basis of up-the-ladder immunity due to the undisputed evidence of its workers' compensation coverage, the recurrent nature of the work performed on a near-daily basis, and the fact that the tree trimming right of way maintenance work was required by law. *See Cabrera*, 568 S.W.3d at 870.

Further arguments raised in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM the Breathitt Circuit Court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

L. Dustin Riddle
Salyersville, Kentucky

BRIEF FOR APPELLEE
KENTUCKY POWER COMPANY:

Wendell S. Roberts
Donald R. Yates, II
Ashland, Kentucky

Randall Scott May
Hazard, Kentucky